**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(MIAMI DIVISION)**

**Case No.: _____**

AVILA RODRIGUEZ HERNANDEZ
MENA & GARRO LLP

      Plaintiff,

v.

SECURITY NATIONAL INSURANCE
COMPANY,

      Defendant.

_____/

## **COMPLAINT**

Plaintiff Avila Rodriguez Hernandez Mena & Garro LLP ("Avila Law") sues Defendant Security National Insurance Company ("Security") and alleges the following.

### NATURE OF ACTION

1.    This is an action for breaches of contract and for declaratory relief that arises out of Security's wrongful declination of insurance coverage, attempted rescission of the insurance policies at issue, and refusal to provide a defense with respect to claims stemming from an alleged Ponzi scheme perpetrated by Roberto Cortés, Ernesto Weisson, and their associates. When the issues surrounding the attempted rescission were seemingly settled, Security then breached the settlement agreement, leading to the instant lawsuit.

### PARTIES, JURISDICTION, AND VENUE

2.    Plaintiff Avila Law is a Florida limited liability partnership with its principal place of business in Miami-Dade County, Florida. All of Avila Law's partners are citizens of Florida.

3.      Avila Law was formerly known as Avila Rodriguez Hernandez Mena & Ferri LLP.[1]

4.      Defendant Security is a Delaware corporation, with its principal place of business in Dallas, Texas, that is authorized by the Florida Office of Insurance Regulation to, and in fact does, transact business and issue insurance coverage in Florida.

5.      The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship, Avila Law's damages exceed $75,000, exclusive of interest and costs.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

7.      This lawsuit has a related action as it stems from the breach of a settlement agreement reached after Security instituted a subsequently dismissed lawsuit in this district, assigned case number 1:21-cv-24252-DPG.

## BACKGROUND

### *Security's Promise of Coverage*

8.      Security issued insurance policies with policy numbers SES1342450 07 (effective October 30, 2019, through October 20, 2020, and attached as Exhibit A) and SES134250 08 (effective October 30, 2020, through October 30, 2021, attached as Exhibit B).

9.      The policies are valid and enforceable contracts under Florida law and were in full force and effect at all material times.

10.     Under Section I.A of the policies, Security promised to "pay **Damages** and **Claim Expenses**, in excess of the Self-Insured Retention identified in the Declarations, if applicable, and

---

[1] To be clear, despite the change in name, references to Avila Law, Avila Rodriguez Hernandez Mena & Ferri LLP, and Avila Rodriguez Hernandez Mena & Garro LLP, are all to the same, singular entity.

2

subject to the Policy's Limit of Liability, that the **Insured** shall become legal obligated to pay as a result of a **Claim** made against the **Insured** for a **Wrongful Act**, provided that (i) the Claim is first made against the **Insured** and reported to the Company, in writing, during the **Policy Period** or the Extended Reporting Period, if applicable; (ii) the **Insured** has no knowledge of such **Wrongful Act** prior to the Inception Date of this Policy, and (iii) such **Wrongful Act** took place on or after the **Retroactive Date** set forth in the Declarations Page of this Policy and prior to the end of the **Policy Period**." The bolded and other terms are defined in the policies.

11.     Under Section I.C of the policies, Security undertook a "duty to defend any **Claim** against the **Insured** to which this Policy applies, even if any of the allegations of the **Claim** are groundless, false, or fraudulent."

12.     The policies define "**Insured**" to include the "**Named Insured**" and the "**Named Insured**" under the policy is Avila Law.

13.     The policies define a "**Claim**" as "a written demand received by the **Insured** for monetary **Damages** which alleges a **Wrongful Act**[.]"

14.     The policies define "**Damages**" to mean "any compensatory sum which the **Insured** becomes legally obligated to pay" including "monetary judgments or settlements" and "pre-judgment and post-judgment interest."

15.     The policies—as amended by the endorsement titled Coverage Enhancements for Preferred Risks Lawyers—define "**Wrongful Act**" as "any actual or alleged act, error, or omission committed or attempted in the rendering or failing to render **Professional Services**[.]"

16.     The policies—as amended by the endorsement titled Coverage Enhancements for Preferred Risks Lawyers—define "**Professional Services**" as "services provided by any **Insured** to others as a lawyer[.]"

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

*The Alleged Ponzi Scheme*

17.    Roberto Cortés, Ernesto Weisson, and their associates are alleged to have engaged in a long-running Ponzi scheme, effecting over 200 entities (primarily in Latin America), and potentially resulting in more than $150 million in losses.

18.    Mr. Cortés and Mr. Weisson, along with many of their associates, were arrested. While Mr. Cortés and Mr. Weisson are awaiting trial, certain associates have already pled guilty to involvement in the Ponzi scheme.

19.    Likely as a result of being unable to collect such sizeable damages from the alleged wrongdoers themselves, those seemingly affected by the Ponzi scheme have brought numerous and sundry lawsuits against other entities, including entities even tangentially involved.

*The Investor-Plaintiffs' Claims*

20.    One such lawsuit is the case styled *Lopez Lincuez v. Cortes*, case number 2020-CA-004163, before the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

21.    Plaintiffs in that case—which number over 150 entities and are referred to here as the "Investor-Plaintiffs"—brought a litany of claims against not only the alleged wrongdoers themselves, but a host of professional services companies, including Avila Law.

22.    Avila Law was named in a single count for alleged violation of the Florida Securities and Investor Protection Act, Fla. Stat. § 517.011 *et seq.*

23.    Avila Law was served with that lawsuit on March 4, 2020, and provided notice to Security on the following day.

24.    At the time, Security recognized its duty to defend Avila Law and, on or around June 29, 2020, issued a letter stating that it was reserving its rights as regards a potential fraud exclusion.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

25.     Avila Law investigated the claims made against it and moved to dismiss the Investor-Plaintiffs' claim.

26.     Before that motion to dismiss could be heard, without payment of any kind, with the consent of Security, and agreeing only to a tolling agreement with the Investor-Plaintiffs, Avila Law was dismissed from the case without prejudice.

27.     Avila Law and the Investor-Plaintiffs continued to negotiate settlement with the knowledge and consent of Security.

*The Liquidator-Plaintiff's Claims*

28.     Seemingly as a result of Mr. Cortés, Mr. Weisson's, and their associates' actions, the entities through which the Ponzi scheme was allegedly accomplished were placed in liquidation.

29.     Michael Pearson in his capacity as the joint official liquidator and foreign representative for Diversified Real Estate Development Ltd. (formerly known as ORC Senior Secured Limited), GMS Global Market Step Up Note Ltd., Preferred Income Collateralized Interest Ltd., SG Strategic Income Ltd., and Sentinel Investment Fund SPC—referred to here as the Liquidator-Plaintiff—made claims and demands against numerous entities, including Avila Law.

30.     The Liquidator-Plaintiff made an unspecified and unelaborated statement that it had "viable claims" against Avila Law in July 2020. Later that month, Avila Law provided notice of those claims to Security.

31.     At the time, Security recognized its duty to defend Avila Law and incorporated or assigned these claims to the same claim number as the one related to the Investor-Plaintiffs.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

32.     Avila Law and the Liquidator-Plaintiff, with the knowledge and consent of Security, entered into a tolling agreement such that those parties could explore potential settlement.

33.     Avila Law investigated the claims against it, rebutted the allegations made by the Liquidator-Plaintiff and continued to negotiate possible settlement with the Liquidator-Plaintiff.

34.     This was all done with the knowledge and consent of Security.

*Settlement Negotiations and Security's About-Face*

35.     From the time Avila Law first provided notice of the Investor-Plaintiffs' claims through mid-September of 2021, the parties worked well together and were seemingly aligned on strategy.

36.     During this period, on January 22, 2021, counsel for Avila Law met with numerous executives of Security by video conference to discuss the Investor-Plaintiffs' and the Liquidator-Plaintiff's claims.

37.     As a result of that meeting and other communications, Security repeatedly stated that it would pay a certain amount for resolution of the Investor-Plaintiffs' and Liquidator-Plaintiff's claims.

38.     From the time the Investor-Plaintiffs brought their claims through approximately mid-September of 2021, the adjuster assigned to manage Avila Law matters was Amy Breazeale.

39.     Ms. Breazeale was promoted and a new adjuster, Mark Rapponotti, took over Avila Law matters in mid-September of 2021.

40.     This was unfortunate timing as Avila Law had continued to negotiate settlement of the Investor-Plaintiffs' claims and the Liquidator-Plaintiff's claims with the Investor-Plaintiffs' claims being on the cusp of settlement.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

41.     Upon taking over for Ms. Breazeale, Mr. Rapponotti demanded that there be no further settlement communications without his approval.

42.     Security further claimed that it had not authorized settlement in an amount previously agreed to, but instead had only authorized a far lesser amount.

*The New Adjuster Updates the Reservation of Rights*

43.     On October 18, 2021, Security through coverage counsel, sent an updated but internally inconsistent reservation-of-rights letter. A copy of that letter is attached as Exhibit C.

44.     This reservation of rights letter stated that Security continued to recognize coverage, but did not "believe[] there is coverage for the Claims" and recognized only a limited duty to defend.

45.     This reservation-of-rights letter was premised on three incorrect arguments: that Avila Law had prior knowledge of the "Wrongful Act," that coverage is barred by the fraud exclusion, and that there is a material or fraudulent misstatement in Avila Law's application for insurance.

46.     Seemingly to avoid its obligations and to create unnecessary difficulties on the cusp of settlement, Security in its reservation-of-rights letter uncritically accepts the un-proven and untrue allegations that Avila Law knew about and had some involvement in the Ponzi scheme which is the subject of the Investor-Plaintiffs' and Liquidator-Plaintiff's claims.

47.     Security claims that certain allegations show that Avila Law had prior knowledge of a Wrongful Act but—apart from being mere allegations—those allegations had been known to Security since Avila Law first provided notice and, until October 2021, had rightfully been discounted.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

48.     To be clear, Avila Law had __no__ prior knowledge of any Wrongful Act given that no such Wrongful Act exists nor did it know there was even a theoretical Wrongful Act until such time as it was served with the Investor-Plaintiffs' complaint.

49.     Indeed, many of the allegations cited by Security in that letter only state that Avila Law should have known that Mr. Cortés and Mr. Weisson suffered from a "poor reputation" or were untrustworthy; they do not suggest that Avila Law had knowledge of the Ponzi scheme, much less that Avila Law knew of some Wrongful Act related to the rendering of its Professional Services.

50.     Security also repeated or re-cited the fraud exclusion in its updated reservation-of-rights letter. That exclusion would apply only "if a final adjudication adverse to" Avila Law is entered that establishes "such a dishonest, criminal, intentional, malicious or fraudulent act, or willful violation."

51.     There is no such adjudication nor could such an adjudication ever come to pass as Avila Law did not act in such a manner.

52.     Finally, Security claims that Section 627.409 of the Florida Statutes would justify rescission of the first insurance policy. Though Security claims that such a decision would be justified, it is not a decision that Security makes at the time of the updated reservation-of-rights letter.

53.     Security claims that the statute's requirements of a material or fraudulent misrepresentation is satisfied because Avila Law did not ascribe a percentage of its gross billings to "Securities/Bonds work" and because it answered "no" to a lengthy question essentially asking whether Avila Law was aware of any facts which may result in a claim.

54.     Neither would justify rescission.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

55.     The first purported misrepresentation is neither a misrepresentation nor does it have any bearing on coverage. The 2019 application cited in the letter asks for gross billings attributable to the "last fiscal year." Here, the allegations are that Avila Law's actions or omissions were committed in or around 2012 or 2015, but there are no allegations which bear upon work performed in 2018 or 2019.

56.     Regardless, Avila Law did not perform any securities work. As regards the Investor-Plaintiffs' lawsuit—and as already known to Security—their claim for aiding and abetting a violation of securities law fails exactly because there are no allegations that Avila Law was involved in securities work.

57.     While Investor-Plaintiffs' claim lacked allegations that Avila Law was involved in the sale of securities, it was nonetheless premised on Avila Law's provision of services as a lawyer and therefore falls under the policies' definition of "**Professional Services**."

58.     Similarly, though the Liquidator-Plaintiff has made allegations that Avila Law performed legal securities work, they are untrue.

59.     As it relates to both claims, Mr. Cortés and Mr. Weisson and/or their entities had separate securities counsel.

60.     Nor would the attribution of a certain percentage of gross billings to "Securities/Bond work" be material to Security's acceptance of the risk it assumed.

61.     Had some percentage of gross billings be attributed to "Securities/Bond work" then Security would have issued a policy with the same material terms as the first policy.

62.     The second purported misrepresentation—answering "no" to a question in the 2019 application asking whether Avila Law had knowledge of any facts which may result in a claim— would also not justify rescission.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

63.     The only basis Security identifies as Avila Law being aware of any facts which would result in a claim is the indiscriminate and wholesale acceptance of untrue and unproven allegations.

64.     There is no proof, much less an adjudication of any kind which shows that Avila Law answered that question incorrectly.

65.     And again, to be clear, Avila Law was not aware of any facts which would give rise to the claims brought by the Investor-Plaintiffs and Liquidator-Plaintiff at the time it signed the insurance application.

66.     Apart from being unfounded, these statements by Security were unnecessary in light of the potential settlement of the claims.

*Security's Relationship with Avila Law Deteriorates*

67.     On October 29, 2021, Avila Law sent Security—in an abundance of caution—a "Notice of Circumstances" for an unrelated manner.

68.     Perhaps as a result of this notice, Security decided it was going to unequivocally ends its relationship with Avila Law.

69.     Security sent a letter, dated November 16, 2021, declining coverage and stating that Avila Law made misrepresentations in its application for the second policy, namely that Avila Law did not attribute a percentage of its gross billings to certain areas of practice and answered "no" to the same lengthy question essentially asking whether Avila Law was aware of any facts which may result in a claim.

70.     As with the previous letter under the first policy, neither would justify rescission.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

71.     No percentage of Avila Law's gross billings relevant to the application should be categorized as "Securities/Bonds work," "Investment Counseling / Money Mngt. [*sic*]," and "International Law," nor would that have any bearing on coverage.

72.     There are currently no lawsuits or demands made against Avila Law related to the "Notice of Circumstances" and therefore it is impossible that Security could make a good faith determination that there were material misrepresentations in the application.

73.     Nor would the attribution of a certain percentage of gross billings to those areas of practice have been material to Security's acceptance of the risk it assumed.

74.     Had some percentage of gross billings been attributed to those areas of practice, then Security would have issued a policy with the same material terms as the second policy.

75.     Indeed, at the time it issued the second policy, Security had already been made aware of the claims related to the Ponzi scheme, was recognizing coverage for those claims, and still chose to issue the second policy. Security was also aware of any purported misrepresentation or allegations which Security has construed to mean that Avila Law should have allocated some percentage of its gross billings to certain practice areas.

76.     As there are no lawsuits or demands related to the "Notice of Circumstances," Security could not in good faith determine that any exclusion to coverage would apply.

77.     As with the "updated" reservation-of-rights letter for the alleged Ponzi scheme, Security uncritically accepted or contorted allegations or purported facts with the purpose of avoiding its obligations to Avila Law.

*Security's Wrongful Declination of Coverage*

78.     The "Notice of Circumstances," however, seemingly caused Security to attempt to avoid any and all obligations to Avila Law by rescinding the insurance policies.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

79.     In a letter dated November 19, 2021—but received by Avila Law at the same time as the letter dated November 16, 2021—Security provided its notice of its attempt to rescind the first and second insurance policies. A copy of that letter is attached as Exhibit D.

80.     That letter purports to rescind the insurance policies on the basis of the supposed misrepresentations described in the "updated" reservation-of-rights letter and the letter responding to the "Notice of Circumstances."

*Security's "Race to the Courthouse" and About-Face*

81.     Before Avila Law could file suit seeking to clarify the obligations between the parties, Security filed a complaint assigned to the Hon. Judge Gayles, styled *Security National Insurance Company v. Avila Rodriguez Hernandez Mena & Garro LLP*, case number 1:21-cv-24252-DPG (S.D. Fla. Dec. 3, 2021).

82.     Avila Law filed its answer and affirmative defenses, and the parties engaged in settlement discussions.

83.     Before that settlement was finalized, the court dismissed the action without prejudice for failure to timely file a joint scheduling report.

84.     Avila Law and Security executed a settlement agreement which vindicated Avila Law's position and was an about-face of the position taken by Mr. Rapponotti on behalf of Security.

85.     Due to the confidential nature of the settlement agreement, Avila Law will seek to file that agreement under seal.

86.     Among other terms, the settlement agreement stated that "Security National shall pay Avila the sum of USD 219,853.04 . . . . (the 'Payment'). The Payment shall be made by electronic transfer or domestic wire to the León Cosgrove LLP Trust Account, information

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

provided below, within fifteen (15) business days of Security National having received an executed copy of this Agreement from Avila."

87.     Security National received a copy of the settlement agreement executed by Avila Law on or around July 25, 2022.

88.     The settlement agreement was signed by Security National on July 27, 2022.

89.     Only a partial payment of that amount was made by Security National.

90.     The settlement agreement also stated that "Security National further agrees that it shall indemnify Avila with respect to the Claims and agrees to process for attorneys' fees and costs incurred by León Cosgrove LLP in relation to the Claims . . . incurred on or after the Effective Date."

91.     Security agreed to continue to provide a defense to Avila Law pursuant to certain reservations of rights.

92.     Under the framework provided by the settlement agreement, Avila Law's counsel continued to defend Avila Law and incur fees and costs related to the same.

93.     Security has not indemnified or otherwise paid those fees and costs.

*General Allegations*

94.     No conditions, exclusions, or coverage defenses in the first policy apply to bar coverage for the claims brought against Avila Law by the Investor-Plaintiffs and the Liquidator-Plaintiff.

95.     By refusing to recognizing its continuing duty to defend and ultimately indemnify Avila Law for the Investor-Plaintiffs' and Liquidator-Plaintiff's claims, Security repudiated or anticipatorily breached its obligations under the first policy.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

96.     By refusing to provide coverage and by seeking to rescind both policies, Security has also repudiated or anticipatorily breached its obligations under the policies.

97.     To the extent Security "cured" or retracted its repudiation or anticipatory breach of the policies by virtue of the settlement agreement, Security is seemingly backtracking from that position in light of its failure to comply with the terms of the settlement agreement.

98.     All conditions precedent to this action have been performed, waived, or are excused.

99.     Avila Law has retained legal counsel and is obligated to pay the undersigned counsel a reasonable fee for the services rendered in this action.

**COUNT I – BREACH OF CONTRACT (SETTLEMENT AGREEMENT)**

100.    Avila Law incorporates by reference the allegations in paragraphs 1 through 99 of this complaint as if fully set forth here.

101.    The settlement agreement is a binding, valid, and enforceable contract under Florida law.

102.    Security has breached that contract in a number of ways, including without limitation, by failing to make the necessary payments and provide for Avila Law's fees and costs in relation to the claims bought against Avila Law.

103.    As a direct, foreseeable, and proximate cause of Security's breaches of the policy, Avila Law has suffered damages.

104.    Security is accordingly liable to Avila Law in an amount to be determined at trial.

WHEREFORE, Avila Law requests that the Court enter judgment against Security granting Avila Law the following relief:

        a.      Contractual and compensatory damages.

14

     b.     Pre- and post-judgment interest.

     c.     An award of Avila Law's costs in prosecuting this action.

     d.     An award of Avila Law's reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statues or other applicable law.

     e.     Any other relief that the Court deems just and proper.

### COUNT II – BREACH OF CONTRACT (FIRST POLICY)

105.    Avila Law incorporates by reference the allegations in paragraphs 1 through 99 of this complaint as if fully set forth here.

106.    At all material times, Avila Law was an insured under the first policy, which is a binding, valid, and enforceable insurance contract under Florida law.

107.    The claims made against Avila Law by the Investor-Plaintiffs and the Liquidator-Plaintiff are covered under the first policy.

108.    By refusing and failing to provide even a qualified defense to Avila Law and by refusing to consent (or perhaps more accurately withdrawing its consent) to a reasonable settlement of the Investor-Plaintiffs and the Liquidator-Plaintiff's claims against Avila Law within policy limits, Security breached its duties and obligations under the first policy and thus breached the contract.

109.    Further, Security is in breach of the first policy by seeking to rescind that policy void *ab initio* thereby refusing to recognize its contractual obligations.

110.    As a direct, foreseeable, and proximate cause of Security's breaches of the policy, Avila Law has suffered damages, it has been deprived of the benefits due under the first policy, and has and will incur expenses in defending against the aforementioned claims.

111.    Security is accordingly liable to Avila Law in an amount to be determined at trial.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

WHEREFORE, Avila Law requests that the Court enter judgment against Security granting Avila Law the following relief:

   a.  Contractual and compensatory damages.

   b.  Pre- and post-judgment interest.

   c.  An award of Avila Law's costs in prosecuting this action.

   d.  An award of Avila Law's reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statues or other applicable law.

   e.  Any other relief that the Court deems just and proper.

### COUNT III – BREACH OF CONTRACT (SECOND POLICY)

112. Avila Law incorporates by reference the allegations in paragraphs 1 through 99 of this complaint as if fully set forth here.

113. At all material times, Avila Law was an insured under the second policy, which is a binding, valid, and enforceable insurance contract under Florida law.

114. Security is in breach of the second policy by seeking to rescind that policy void *ab initio* thereby refusing to recognize its contractual obligations.

115. As a direct, foreseeable, and proximate cause of Security's breaches of the policy, Avila Law has suffered damages, as it has been deprived of the benefits due under the second policy, and has and will incur expenses in defending against the aforementioned claims.

116. Security is accordingly liable to Avila Law in an amount to be determined at trial.

WHEREFORE, Avila Law requests that the Court enter judgment against Security granting Avila Law the following relief:

   a.  Contractual and compensatory damages.

   b.  Pre- and post-judgment interest.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

    c.      An award of Avila Law's costs in prosecuting this action.

    d.      An award of Avila Law's reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statues or other applicable law.

    e.      Any other relief that the Court deems just and proper.

### COUNT IV – DECLARATORY JUDGMENT (SETTLEMENT AGREEMENT)

117.    Avila Law incorporates by reference the allegations in paragraphs 1 through 99 of this complaint as if fully set forth herein.

118.    This is an action for a declaratory judgment under 28 U.S.C. § 2201.

119.    Avila Law contends that the settlement agreement is a binding, valid, and enforceable contract.

120.    By failing to comply with the terms of the settlement agreement, and in light of its previous attempt to avoid its obligations under the insurance policies, Avila Law is in doubt as to its rights under the settlement agreement.

121.    There is a bona fide, actual, present practical need for a declaration based on present, ascertainable facts.

122.    Avila Law's rights under the settlement agreement are dependent upon the facts or the law applicable to the facts.

123.    Avila Law and Security have an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law.

124.    All the antagonistic and adverse interests are before the Court.

125.    The relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

WHEREFORE, Avila Law requests that the Court enter judgment against Security granting

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

Avila Law the following relief:

    a.  A declaration that the settlement agreement remains a binding, valid, and enforceable contract.

    b.  An award of Avila Law's costs in prosecuting this action.

    c.  An award of Avila Law's attorneys' fees and costs pursuant to Section 627.428 of the Florida Statues or other applicable law.

## COUNT V – DECLARATORY JUDGMENT (FIRST POLICY)

126.    Avila Law incorporates by reference the allegations in paragraphs 1 through 99 of this complaint as if fully set forth here.

127.    This is an action for a declaratory judgment under 28 U.S.C. § 2201.

128.    Avila Law contends that the claims by the Investor-Plaintiffs and the Liquidator-Plaintiff are covered by the first policy, triggering Security's duties to defend and to indemnify Avila Law.

129.    Security contends that coverage has not been triggered, that an exclusion would apply to coverage, and that the first policy should be rescinded and treated as void *ab initio*.

130.    Avila Law is in doubt as to its rights under the first policy.

131.    There is a bona fide, actual, present practical need for a declaration based on present, ascertainable facts.

132.    Avila Law's rights under the first policy are dependent upon the facts or the law applicable to the facts.

133.    Avila Law and Security have an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law.

134.    All the antagonistic and adverse interests are before the Court.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

135.    The relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

WHEREFORE, Avila Law requests that the Court enter judgment against Security granting Avila Law the following relief:

a.    A declaration that the first policy remains a binding, valid, and enforceable insurance contract which covers that claims brought by the Investor-Plaintiffs and the Liquidator-Plaintiff and that Security must recognize its duty to defend and ultimately indemnify Avila Law.

b.    An award of Avila Law's costs in prosecuting this action.

c.    An award of Avila Law's attorneys' fees and costs pursuant to Section 627.428 of the Florida Statues or other applicable law.

d.    Any other relief that the Court deems just and proper.

### COUNT VI – DECLARATORY JUDGMENT (SECOND POLICY)

136.    Avila Law incorporates by reference the allegations in paragraphs 1 through 99 of this complaint as if fully set forth herein.

137.    This is an action for a declaratory judgment under 28 U.S.C. § 2201.

138.    Avila Law contends that the second policy is a binding, valid, and enforceable insurance contract.

139.    Security claims that the second policy should be rescinded and treated as void *ab initio*.

140.    Avila Law is in doubt as to its rights under the second policy.

141.    There is a bona fide, actual, present practical need for a declaration based on present, ascertainable facts.

142.    Avila Law's rights under the second policy are dependent upon the facts or the law

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

applicable to the facts.

143.    Avila Law and Security have an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law.

144.    All the antagonistic and adverse interests are before the Court.

145.    The relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

WHEREFORE, Avila Law requests that the Court enter judgment against Security granting Avila Law the following relief:

d.  A declaration that the second policy remains a binding, valid, and enforceable insurance contract.

e.  An award of Avila Law's costs in prosecuting this action.

f.  An award of Avila Law's attorneys' fees and costs pursuant to Section 627.428 of the Florida Statues or other applicable law.

g.  Any other relief that the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Avila Law demands a trial by jury on all issues so triable.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

Dated: December 23, 2022

Respectfully submitted,

 */s/ Jordi C. Martínez-Cid*
Derek E. León
  Florida Bar No. 625507
Jordi C. Martínez-Cid
  Florida Bar No. 100566
**LEÓN COSGROVE JIMÉNEZ, LLP**
255 Alhambra Circle, 8th Floor
Coral Gables, Florida 33134
Telephone: 305.740.1975
Facsimile: 305.351.4059
Email: dleon@leoncosgrove.com
Email: jmartinez-cid@leoncosgrove.com
Email: eperez@leoncosgrove.com
Email: lburns@leoncosgrove.com

*Counsel for Plaintiff Avila Rodriguez
Hernandez Mena & Garro LLP*